In the
United States Court of Appeals
For the Seventh Circuit

No. 98-2276

Linda W., et al.,

Plaintiffs-Appellants,
v.

Indiana Department of Education, et al.,

Defendants-Appellees.


Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:94-CV-268RM--Robert L. Miller, Jr., Judge.


Argued October 27, 1999--Decided December 22, 1999


  Before Bauer, Coffey, and Easterbrook, Circuit Judges.

  Easterbrook, Circuit Judge.  Ryan Van Damme, who
is dyslexic, received an individually tailored
educational program at the public schools of
Mishawaka, Indiana. Near the end of Ryan's
seventh-grade year (in spring 1993), his parents
objected to the school district's plan for the
next year. During summer 1993 Ryan attended
Landmark School in Massachusetts, and toward the
end of that summer his parents requested a
hearing on the adequacy of the district's plan.
A hearing officer concluded that the district
must provide Ryan with help from specialists
(three 45-minute sessions per week with remedial
reading instructors, two per week on
"accommodation strategies") and afford
compensatory education during the summers of 1994
and 1995 to make up for its late start in
supplying this assistance. The hearing officer
concluded, however, that Ryan was not entitled to
summer education as a norm and should receive
most of his instruction via "mainstreaming" in
the public schools. Shortly after receiving this
decision, Ryan's parents removed him from the
Mishawaka schools and sent him to Landmark School
full time. They initiated this litigation seeking
to compel Mishawaka to pay for Ryan's education
at Landmark.

  After concluding that Mishawaka is responsible
for Ryan's education, see 927 F. Supp. 303 (N.D.
Ind. 1996), the district court concluded that the

final decision of the administrative process was reasonable and should be enforced in the main. Local and state educational bodies provided Ryan with multiple hearings under the Individuals with Disabilities Education Act, 20 U.S.C. sec.sec. 1400-87, but it is not necessary to recount all the details. What matters now is that at the end of the administrative process, state officials concluded that education in the public schools, plus five special sessions per week, plus supplemental education during the summers of 1994 and 1995, would provide Ryan with a free appropriate public education. With this conclusion the district court agreed in a thoughtful opinion. The district court accorded suitable deference to the hearing officers' conclusions. Given the deference we owe to the district judge's assessment of the person-specific factors that these situations entail, the decision cannot be upset on appeal. Morton Community Unit School District No. 709 v. J.M., 152 F.3d 583, 587-88 (7th Cir. 1998), explains why appellate review is deferential in a case of this nature even though the district court granted summary judgment; no more need be said about the standard of review or the merits of the hearing officers' educational plan for Ryan.

Nonetheless, Ryan's parents contend, they are entitled to reimbursement for the placement at Landmark because at the time they transferred Ryan from public to private school, Mishawaka was not providing him with an adequate education. Under the stay-put provision of the Act, 20 U.S.C. sec.1415(e)(3) (1992 ed.), the parents' objection to the proposed 1993 plan locked in place the 1992 plan--a plan that, the hearing officers determined, had flaws similar to those of the 1993 plan. (Amendments made to the Act in 1997 alter the stay-put rules, see sec.1415(j), (k)(7); we need not explore the differences.) When Ryan was transferred to Landmark in January 1994, the school district was still using the 1992 plan, because both sides had filed administrative appeals from the initial hearing officer's decision. Ryan's parents invoke Burlington School Committee v. Massachusetts Department of Education, 471 U.S. 359, 369-71 (1985), for the proposition that parents who remove their child from a deficient educational environment are entitled to compensation for the replacement education. Parents who act on a belief that the public education is inadequate take a risk, for, if the school's program is upheld in the end, the parents are out of pocket; but Ryan's parents contend that the vindication of their view means that they must be reimbursed. Like the district court, we think that this overreads Burlington.

What the Court held in Burlington is that a district judge has the discretion "to order school authorities to reimburse parents for their expenditures on private special education for a child if the court ultimately determines that such placement, rather than a proposed IEP [individualized education program], is proper under the Act." 471 U.S. at 369. Parents thus must establish more than that the school district's original plan is deficient. If that were enough, then the costs to school districts of administering the Act would skyrocket, for educational professionals frequently disagree among themselves how best to cope with a pupil's learning problems. One set of educators proposed a plan for Ryan; the first hearing officer modified the plan; the state's Board of Special Education Appeals modified the hearing officer's modifications. All three participants--the school district, the hearing officer, and the Board-- believed that Mishawaka's public schools could provide Ryan with an appropriate education once suitable adjustments had been made to the program. This is a frequent sequence, and if it were enough by itself to justify moving the child to a private school (with compulsory reimbursement), then there would be an exodus from the public schools. That is not what Burlington contemplates. Parents not only must show that placement in a private school is "proper under the Act" but also must persuade a district court to exercise its discretion to provide reimbursement. The Court emphasized that discretion, which means that reimbursement is not a matter of entitlement. "The statute directs the court to 'grant such relief as [it] determines is appropriate' [when the school district's plan is inadequate]. The ordinary meaning of these words confers broad discretion on the court." 471 U.S. at 369 (quoting from 20 U.S.C. sec.1415(e)(2), which has since been moved to sec.1415(i)(2)(B)(iii)).

In this case the district court concluded that reimbursement for private education is not "appropriate", because the hearing officers and the judge believed that with extra sessions five times a week, education in the Mishawaka schools would satisfy the Act's requirements--would indeed be preferable to education at Landmark School, for the Act prefers a "mainstreaming" approach while Landmark's program separates its pupils from their non-disabled peers. The hearing officers recognized that the Mishawaka schools had fallen behind in providing extra services to Ryan and that compensatory enrichment was called for; but the hearing officers and the district court also concluded that Ryan did not need placement in Landmark either for summer sessions or for a full program. Given the discretion to which the Supreme Court referred, this reasoned

(and reasonable) conclusion cannot be upset now.

One final issue remains: attorneys' fees. Ryan's parents contend that they have "prevailed" in this case and therefore are entitled to an award of fees despite the district court's unwillingness to upset the hearing officers' principal decisions. Plaintiffs recovered about $1,000 as compensation for private tutoring for Ryan in January and February 1994. On all other issues they lost, and $1,000 is paltry compared with the relief they were seeking. That implies, as the district court held, that plaintiffs did not prevail in the litigation. See Fletcher v. Ft. Wayne, 162 F.3d 975 (7th Cir. 1998); Hunger v. Leininger, 15 F.3d 664, 670 (7th Cir. 1994). Plaintiffs reply that they won a procedural victory (the district court's decision that Mishawaka is responsible for Ryan's education) and that the hearing officers found the district's plan wanting. True enough, but to prevail in litigation one must win on the merits, and not just score tactical victories in interlocutory skirmishes. Hanrahan v. Hampton, 446 U.S. 754 (1980). Plaintiffs did not need to file suit to enjoy the value of their success in the administrative process. Even the decisions of the hearing officers did Ryan no good in the end, because his parents removed him from the public schools before those decisions took effect. The district court did not abuse its discretion in holding that defendants are the prevailing parties in this litigation.

Affirmed